UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TODD C. BANK, individually and on behalf
of all others similarly situated,

                           Plaintiff,           **REPORT AND RECOMMENDATION**

        -against-                          12-CV-584 (JG) (VMS)

CARIBBEAN CRUISE LINE, INC.,

                           Defendant.
--------------------------------------------------------X

**Vera M. Scanlon, United States Magistrate Judge:**

**I.      Introduction**

      On February 6, 2012, Plaintiff Todd C. Bank ("Plaintiff") commenced this action against

Defendant Caribbean Cruise Line ("Defendant" or "CCL"), alleging violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B) ("TCPA"), and a regulation promulgated

thereunder, 47 C.F.R. § 64.1200(a)(2).  Plaintiff seeks, individually and on behalf of putative

class members,[1] statutory damages, injunctive relief, attorney's fees and costs.  Docket No. 1.

      Before this Court is Defendant's summary judgment motion, Docket Nos. 37, 38, 39, 45,

48, which Plaintiff has opposed, Docket Nos. 40, 41, 42.  District Judge Gleeson referred

Defendant's summary judgment motion to me for report and recommendation.  For the following

reasons, I respectfully recommend that the District Judge **deny** Defendant's summary judgment

motion.  Defendant also moved to have one of Plaintiff's opposition submissions stricken from

the record.  Docket No. 44.  I respectfully recommend that the District Judge **find as moot**

Defendant's motion to strike insofar as I have not considered the contested documents in

rendering this report and recommendation.

---

[1] In light of the fact that Plaintiff has not yet moved for class certification, this Court treats this
action as an individual complaint at this stage.

## II.      FACTUAL BACKGROUND

The following statements are taken from <u>Docket No. 38</u>, Defendant's Statement of Undisputed Material Facts ("Def. St."), and <u>Docket No. 40</u>, Plaintiff's Statement of Undisputed Material Facts ("Pl. St."), unless otherwise cited.  To the extent there is disagreement between the two, the disagreement is noted.

### a.  General Scheme

Defendant is a cruise line that contracts with political survey research organizations ("SROs").  Pl. St. ¶¶ 9-10; Def. St. ¶¶ 9-10.  The SROs have their own contractual relationships with various political groups under which the SROs collect specifically tailored information for the groups through political surveys and polling.  Def. St. ¶ 11; Pl. St. ¶ 11; <u>Docket No. 38-1</u> at 44-46.

The contracts between the SROs and Defendant involve Defendant providing the SROs with "free cruise" packages to use in a collaborative marketing plan.  Def. St. ¶¶ 9-10.  In support of its summary judgment motion, Defendant offers the Court one such contract as an example of the typical structure of these collaborations.  <u>Docket No. 38-1</u> at 14-21.  The contract submitted by Defendant is a marketing plan agreement between Defendant and an SRO called Economic Strategy Group (hereinafter the "Marketing Plan Agreement").  <u>Id.</u>  Under the Marketing Plan Agreement, the SRO uses an autodialer to transmit "prerecorded survey messages" ("robocalls") to call recipients.  <u>Id.</u>  These surveys are accompanied by the suggestion that the call recipient may be eligible for one of Defendant's "free cruises" on completion of the survey.  <u>Id.</u> at 14.  The SRO therefore benefits from its contract with Defendant because the "free cruise" serves to "incentivize and thus increase survey participation by providing survey takers certain complimentary products and/or services."  <u>Id.</u> at 14.  Defendant benefits under the

collaborative marketing plan because a call recipient who accepts the call transfer finds him- or herself learning about Defendant's services.  The caller who accepts the "free cruise" opportunity finds him- or herself to have various payment obligations and options for one or more add-ons such as those listed in the attachment to the Marketing Plan Agreement:  (1) port fees, (2) beverages aboard ship (excluding coffee and tea), (3) gambling and other paid activities aboard the ship, and (4) possible fuel surcharges.  Id. at 14, 21;  Pl. St. ¶ 10.

A party called via an SRO's robocall, such as Plaintiff, is only connected to Defendant via telephone after he or she has answered all of the survey questions and after he or she has pressed a button on the telephone keypad to be connect to Defendant.  Pl. St. ¶ 8; Def. St. ¶ 8.

### b.   Plaintiff's Experience

On January 19, 2012, Plaintiff received a telephone survey call on his residential telephone line.  Pl. St. ¶ 1; Def. St. ¶ 1.  On Plaintiff's answering the call, a prerecorded voice stated that if Plaintiff were to complete a political survey and remain on the line, he would be given an opportunity to hear about or take a free cruise.  Pl. St. ¶ 2; Def. St. ¶ 2.  During his deposition, Plaintiff remembered that "maybe it said . . . if you participate in the survey, you will then be given the opportunity to take a free cruise."  Docket No. 39-1 at 53 (hereinafter "Tr. [page]:[line]").  The substance of the survey was political in nature, and the questions asked were about the President, the deficit and the economy.  Pl. St. ¶ 3; Def. St. ¶ 3.  Plaintiff fully participated in the political survey by listening to the questions and pressing the corresponding buttons on his telephone keypad to register his responses.  Pl. St. ¶ 4; Def. St. ¶ 4.  In order to be transferred to a live representative to obtain his free cruise, Plaintiff pressed a button, or believes

he pressed a button, on his telephone keypad.[2]  Pl. St. ¶ 5; Def. St. ¶ 5.  After he was transferred

to a live representative to obtain his free cruise for participating in the political survey, Plaintiff

was informed that a third party had placed the political survey call, not Defendant.  Pl. St. ¶ 6;

Def. St. ¶ 6.

## III.   DISCUSSION

### a.   Summary Judgment Standard

Federal Rule of Civil Procedure ("FRCP") 56(a) states that summary judgment may be

granted when the evidence before the court "shows that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(a).  A

genuine dispute of fact exists when there is "sufficient evidence such that a reasonable trier of

fact could not resolve the issue in the non-movant's favor, and an issue is 'material' when its

resolution might affect the outcome of the suit under the governing law."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); see Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)

(stating that a dispute is genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party").  Initially, the moving party bears the burden of demonstrating

that there is no genuine issue of fact or that there is an absence of evidence to support the

nonmoving party's case.  See Anderson, 477 U.S. at 248.  Once the moving party meets its initial

burden, the onus shifts to the nonmoving party to "set forth specific facts showing that there is a

genuine issue for trial."  Id. at 256.  "Assessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment."  Rule v.

Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); see Chambers v. TRM Copy Ctrs. Corp., 43 F.3d

29, 36 (2d Cir. 1994) ("The inferences to be drawn from the underlying facts revealed in

---

[2] This Court will assume that Plaintiff pressed the button as the truth of that fact is irrelevant to
the outcome of the related issue raised by this motion.

materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.") (citations omitted).

### b.  Motion To Strike Plaintiff's Declaration And Exhibits Attached Thereto

Defendant moves, pursuant to FRCP 12(f)(2), to strike Plaintiff's Declaration, submitted in support of his opposition to Defendant's summary judgment motion, and all exhibits attached thereto.  Docket No. 44.  Defendant takes issue with the fact that Plaintiff's Declaration appends (1) copies of documents relating to the Federal Trade Commission's investigation into Defendant's telemarketing practices; (2) a printout from the website of the Florida Attorney General concerning an investigation regarding allegations of CCL's unfair and deceptive trade practices; and 3) a Better Business Bureau Web site printout stating that there were 1,317 complaints against CCL in the past three years.  Docket Nos. 42, 42-1, 42-2, 42-3.  Defendant argues that the exhibits attached to Plaintiff's Declaration should be stricken because, under FRCP 56, "[s]upporting and opposing affidavits shall be made on personal knowledge."  Docket No. 44 ¶ 4.  Defendant claims that Plaintiff does not attempt to authenticate the documents attached.  Id.

A court may take judicial notice of public records and government documents, including other lawsuits, available from reliable sources on the internet under Federal Rule of Evidence 201(b).  Fed. R. Evid. 201(b).  "The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Id.; see, e.g., Finn v. Barney, 471 Fed. App'x 30, 31 (2d Cir. Mar. 27, 2012) (holding that a district court's taking of judicial notice of various documents in connection with a motion to dismiss, including section of Web site disclosing information

regarding Citigroup's auction practices, was not abuse of discretion); Denius v. Dunlap, 330 F.3d

919, 926 (7th Cir. 2003) (finding that the district court abused its discretion by not taking judicial

notice of information from a government agency Web site); Hotel Emps. & Rest. Emps. Union,

Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 540 n.1 (2d Cir.

2002) (taking judicial notice of facts contained in history of construction of performing arts

complex); Effie Film, LLC v. Pomerance, 909 F. Supp. 2d 273, 298-99 (S.D.N.Y. 2012)

(surveying the types of fact of which courts have taken judicial notice); Patsy's Italian Rest., Inc.

v. Banas, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial

notice of articles and Web sites published on the Internet."), aff'd, 658 F.3d 254 (2d Cir. 2011);

Hardin v. Reliance Trust Co., No. 04-CV-2079, 2006 WL 2850457, at *3 (N.D. Ohio Sept. 29,

2006) (citing Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999) (quotation omitted)); U.S. ex

rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (D. Mich. 2003) ("Public records and

government documents are generally considered not to be subject to reasonable dispute . . . . This

includes public records and government documents available from reliable sources on the

Internet.") (internal quotation omitted)).   A court may also take judicial notice of public

documents filed with regulatory agencies.   See Pharm., Inc. v. Am. Pharm. Partners, Inc., No.

05-CV-776 (DRH), 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007).

     Although Plaintiff does not claim personal knowledge of the exhibits included in his

opposition to the motion for summary judgment, these records have other indicia of reliability.

Two of the contested submissions are government documents that are available in the public

record.   As for the challenged Better Business Bureau ("BBB") records, courts have found BBB

records to have "circumstantial guarantees of reliability" insofar as complaints contained therein

were "made independently by unrelated consumers without solicitation and, as here, the

defendants did not suggest any motive of consumers to have fabricated the complaints . . . ."

FTC v. Direct Benefits Group, LLC, No. 6:11-CV-1186-Orl-28TBS, 2012 WL 5508050, at *2

(M.D. Fla. Nov. 14, 2012); see Briese Lichttechnik Vertriebs GmbH v. Langton, No. 09-CV-

9790 (LTS), 2012 WL 3084590, at *2 (S.D.N.Y. July 26, 2012) (finding evaluation of a business

by the Better Business Bureau to be credible); but see Lewis v. Nissan North Am., Inc., Corp.,

No. 04-CV-562 (LAK), 2004 WL 1277999, at *3 (S.D.N.Y. June 9, 2004) (striking, under FRCP

12(f), report from Better Business Bureau attached to complaint where it was deemed irrelevant

to the plaintiff's claims).

Judicial precedent would support a ruling denying Defendant's motion to strike

Plaintiff's Declaration exhibits for the aforementioned reasons. This Court, however, respectfully

recommends that the District Judge **find as moot** Defendant's motion to strike insofar as the

subject documents are of no evidentiary value in terms of assessing whether Plaintiff has raised a

material issue of disputed fact on his viable legal claims, and were not considered by the Court.

### c.  Liability Under The Telephone Consumer Protection Act

Plaintiff's Complaint alleges a violation of 47 U.S.C. § 227(b)(1)(B) and related

regulation 47 C.F.R. § 64.1200(a)(2).  In 1991, "Congress enacted the TCPA in an effort to

address a growing number of telephone marketing calls and certain telemarketing practices

thought to be an invasion of consumer privacy and even a risk to public safety."  In re Rules &

Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14018

(FCC July 3, 2003).  Section 227(b)(1)(B), United States Code, Title 47, holds that it is

> unlawful for any person within the United States, or any person
> outside the United States if the recipient is within the United States
> . . . to initiate any telephone call to any residential telephone line
> using an artificial or prerecorded voice to deliver a message
> without the prior express consent of the called party . . .

47 U.S.C. § 227(b)(1)(B).  The Federal Communications Commission ("FCC") is the agency

vested with the authority to issue implementing regulations for the TCPA, and its 47 C.F.R. §

64.1200(a)(2) provides certain exemptions to 47 U.S.C. § 227(b)(1)(B)'s very broadly framed

prohibition.  Under the regulations, no person may initiate a telephone call as described in 47

U.S.C. § 227

> unless the call (i) is made for emergency purposes; (ii) is not made
> for a commercial purpose; (iii) is made for a commercial purpose
> but does not include or introduce an unsolicited advertisement or
> constitute a telephone solicitation; (iv) is made to any person with
> whom the caller has an established business relationship at the time
> the call is made; or (v) is made by or on behalf of a tax-exempt
> nonprofit organization.

47 C.F.R. § 64.1200(a)(2).

Defendant argues that it is entitled to summary judgment because there is no genuine

issue of material fact that (1) the call to Plaintiff was not made in part for a commercial purpose,

(2) the political survey portion of the call renders it exempt from the TCPA as per 47 C.F.R. §

64.1200(a)(2); and (3) Defendant did not initiate the offending call, as 47 U.S.C. § 227(b)(1)(B)

requires for liability.  Docket No. 38.  This Court will examine these arguments in turn.

### i.   This Court Rejects Defendant's Argument For Summary Judgment On These Undisputed Facts That The Free Cruise Message Was Not Made For A Commercial Purpose

Defendant repeatedly argues that the call was not made in any part "for commercial

purposes nor was it an unsolicited advertisement." [3]  Docket Nos. 37, 38, 45.  Defendant claims

---

[3] Defendant offers to the Court Mitchell N. Roth as an expert witness and submits Mr. Roth's opinion that the robocall was not made for a commercial purpose as evidence that the robocall was not made for a commercial purpose.  Docket No. 38-1 at 8.  Mr. Roth is a partner in the law firm Roth Doner Jackson, PLC, and his legal practice involves, inter alia, helping clients develop "effective marketing strategies to ensure compliance with telemarketing . . . laws," and "defending clients in enforcement actions initiated by the Federal Trade Commission and state attorneys general alleging violations of marketing laws."  Id. at 11.  Mr. Roth opines in a report

that it "is only involved with the SROs because the SROs approached CCL seeking to provide incentives to those SROs for the individuals who participate in the surveys." Docket No. 37 at 4.

Defendant's argument fails because although the Marketing Plan Agreement is designed to give the appearance of a complete separation between the SRO and Defendant, there is no such separation for the purposes of cruise marketing achieved during the survey calls. Any call recipient who permits the call to be connected to CCL will receive promotional information about CCL, which is a commercial advertisement. Defendant cannot get away from the fact that the Marketing Plan Agreement's Attachment 1, which it submitted to the Court, states plainly that a consumer taking a "free cruise" will have the opportunity to buy discretionary goods-and-services add-ons from Defendant, such as beverages (excluding coffee and tea), gambling and other paid activities onboard. Docket No. 38-1 at 21. Thus, even if the cruise itself were free, the circumstances of such a cruise would be that the survey taker/passenger would likely spend money with Defendant, which would be to Defendant's direct financial advantage.[4]

---

based upon the case record submitted to the Court, that "[t]he subject telephone calls that were allegedly initiated to the Plaintiff were not made for a commercial purpose." Id. at 8. The Court acknowledges the investment that Defendant has made in Mr. Roth, Docket No. 38-1 at 10 (Mr. Roth stating his "expect[ation] to be compensated . . . at the rate of $450" for the time he expends in this matter), but "as a general rule an expert's testimony on issues of law is inadmissible." U.S. v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (summarizing judicial precedent calling legal expert opinions an encroachment upon a court's duty and an invasion of a court's authority); see In re Initial Public Offering Sec. Lit., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law–a kind of axiomatic principle,'" quoting Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. Kan. L. Rev. 325, 352 (1992)).

[4] Defendants also acknowledge in their reply brief that they host a Web site detailing charges related to the free cruise. Docket No. 45 at 10 (stating that Plaintiff properly credited them, Docket No. 41 at 6, with publicizing the required charges relating to the free cruise on their Web site). The Web site shows "required charges" of $59 per person for "port charges" (which this Court presumes is a pass-along of what Defendant must pay to dock the boat) and government taxes. See www.caribbeancl.com/Terms.htm (last accessed Aug. 21, 2013). Defendant also

The FCC has determined that such offers are "commercial" under the TCPA.  In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14098 (July 3, 2003).  "[T]he Commission finds that prerecorded messages containing free offers and information about goods and services that are commercially available are prohibited to residential telephone subscribers, if not otherwise exempted."  Id.  Courts are to defer to an administering agency's reasonable interpretation of a statute.  See Chevron U.S.A., Inc. v. Nat'l Res. Defense Council, Inc., 467 U.S. 837, 842-45 (1984).  This Court finds that the FCC's analysis is consistent with the statute, and with reality in this case.

In Chesbro v. Best Buy Stores, LP, 705 F.3d 913, 918 (9th Cir. 2012), the Ninth Circuit rejected a defendant store's similar argument that it telephoned its rewards-program members for "purely informational" purposes.  The Ninth Circuit reversed the district court's grant of summary judgment for the store defendant and held that the robocalls had a commercial purpose because they "urged the listener to 'redeem' his [ ] points [and] directed him to a website where he could further engage with the [rewards program] . . . ."  Id.  The Chesbro Court "approach[ed] the problem with a measure of common sense," and ruled that redeeming the points required going to a store and making further purchases.  Id.  Similarly, here, the call presented to the call recipient the possibility of redeeming the right to a free cruise which may have required the soon-to-be sailor to pay money to Defendant and on or before the cruise invited him or her to

---

reserves the right to charge those taking the free cruise $12 per person per day for fuel fees in the event that the New York Mercantile Exchange Index ("NYMEX") lists light sweet crude oil at a price greater than $40.00 per barrel of oil at the time of embarkation.  Id.  Notably, the NYMEX has not listed a barrel of light sweet crude oil at less than $40.00 in over eight years.  See www.oilnergy.com/1onymex.htm#since20 (last accessed Aug. 21, 2013).  A free cruise recipient also reads Web site information about an opportunity to buy a cabin upgrade or an extended stay package.  See www.caribbeancl.com/Terms.htm.  At the bottom of the Web page, in bold, is the following sentence: "This advertising material is being used for the purpose of soliciting sales of a vacation ownership plan."  Id.

purchase additional discretionary add-ons.  In light of the Attachment-1 evidence, this Court finds that the robocalls' mention of the free cruise at least in part gives a commercial purpose to the call and therefore renders it an unsolicited advertisement.

In light of the foregoing, this Court rejects Defendant's argument for summary judgment on these undisputed facts, i.e., a "free cruise" passenger would be presented with the opportunity to consider taking a cruise then to spend money with Defendant in order to take the cruise (or at the latest in time, while on the cruise), that Defendant's "free cruise" message on the robocall was not made for a commercial purpose.

> ### ii.  This Court Rejects Defendant's Argument For Summary Judgment On These Undisputed Facts That The Robocall's Political Survey Content Exempts The Free Cruise Message From TCPA Liability

Defendant argues that the free cruise message was coupled with a political survey so that it is exempt from the TCPA.  Docket No. 37.  The TCPA states that it is unlawful to initiate any telephone call "unless the call is exempt," 47 U.S.C. §227(b)(1)(B), and the FCC has stated that "calls that do not fall within the definition of 'telephone solicitation'" "may include surveys, market research, political or religious speech calls."  In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14039-40 (July 3, 2003).  This is in keeping with Congress's finding that the FCC had "the flexibility to design different rules" for "noncommercial calls, consistent with the free speech protection embodied in the First Amendment of the Constitution."  Telephone Consumer Protection Act, PL 102-243 (S1462), Senate Findings (Dec. 20, 1991).  These exemptions thus serve to protect First Amendment-protected speech and religious activity.

This Court once again finds the Ninth Circuit's decision in Chesbro v. Best Buy Stores, LP, 705 F.3d 913, 919 (9th Cir. 2012), instructive.  In Chesbro, the Court held that a robocall

with a customer-service component violated the TCPA because it also contained a marketing

component.  Id. at  919.  In so ruling, Chesbro observed that neither party had argued that the

FCC Report and Order was unreasonable and held that the agency's interpretation was therefore

due the Court's deference.  Id.  The Court cited it at length to show that dual-purpose calls may

not be employed to shield unsolicited advertisements from the TCPA:

> so-called "dual purpose calls"– calls from mortgage brokers to
> their clients notifying them of lower interest rates, calls from
> phone companies to customers regarding new calling plans, or
> calls from credit card companies offering overdraft protection to
> existing customers—would, in most instances, constitute
> 'unsolicited advertisements,' regardless of the customer service
> element to the call. The Commission explained [in an earlier
> notice] that such messages may inquire about a customer's
> satisfaction with a product already purchased, but are motivated in
> part by the desire to ultimately sell additional goods or services.  If
> the call is intended to offer property, goods, or services for sale
> either during the call, or in the future (such as in response to a
> message that provides a toll-free number), that call is an
> advertisement.

Chesbro, 705 F.3d at 917-18 (citing FCC 2003 Report and Order at 14097-98 ¶ 142).

The Parties here agree that part of the robocall included a political survey.  Pl. St. ¶¶ 2-3;

Def. St. ¶¶ 2-3.  Defendant has supplied the Court with various documents in support of this fact.

Docket Nos. 38-1 at 30-42 (various survey research agreements between SRO and organization

contracting for survey research); id. at 57-61 (draft survey questions); id at 63-79 (statistical

compilations of survey answers).   Plaintiff has not raised a disputed issue of material fact to

show that the SRO did not legitimately conduct survey research and that part of the robocall did

involve a political survey.  Pl. St. ¶¶ 11, 13.  Assuming arguendo that the political survey

qualifies as a TCPA-exempt communication standing alone, Defendant in effect is asking the

Court to decide as a matter of law that Defendant's unsolicited commercial solicitation about the

free cruise is also a TCPA-exempt communication by virtue of its being coupled with exempt political polling.

In light of the reasoning of <u>Chesbro</u> and its reiteration of the FCC's already clear statement that dual purpose calls cannot be manipulated to evade the TCPA, this Court rejects Defendant's argument that its unsolicited commercial robocall cannot, as a matter of law, be found to have violated the TCPA because it was paired with an exempt political poll.

Defendants argue that <u>Chesbro</u> is "completely distinguishable" as it deals with a customer service/unsolicited marketing combination whereas in the instant case this Court is looking at a political survey standing alone.  <u>Docket No. 45</u>.  Plaintiff has offered sufficient evidence (and, in fact, so has Defendant) to show that this case deals with a political survey/unsolicited marketing combination call.  Pl. St. ¶¶ 2-3; Def. St. ¶¶ 2-3; Tr. 53:15-22 (Plaintiff stating under oath that the gist of the phone call's message was that "it was a political survey, and if you participate in the survey, you will then be given the opportunity to take a free cruise").

In light of the foregoing, this Court rejects Defendant's argument for summary judgment on these undisputed facts that the robocall's political survey content, which is only part of the call, exempts the free cruise message from TCPA liability.

### iii.   This Court Rejects Defendant's Argument For Summary Judgment On An Undisputed Record That Plaintiff's Push Of A Button To Connect To Defendant's Live Representative Constitutes Express Consent To The Sales Pitch

Defendant argues that it cannot be held to have initiated the call because it was only at the end of the robocall, in order to hear more information about the "free cruise," that Plaintiff had to push a button in order to connect with Defendant's live representative.  <u>Docket No. 37</u>. Plaintiff's press of a button, according to Defendant, constitutes "prior express consent" to speak to Defendant, which exempts the call from the TCPA. <u>Id.</u>

The statute and regulation referenced by Defendant's argument are 47 U.S.C. § 227(a)(4) and 47 CFR § 16.1200(a)(2), respectively. Section 227(a)(4), United States Code, Title 47, provides that

> [t]he term 'telephone solicitation' mean the initiation of a telephone call . . . for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call . . . to any person with that person's prior express invitation . . . .

47 U.S.C. § 227(a)(4). Section 64.1200(a)(2), Code of Federal Regulations, Title 47, states that no person may "[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. . . ." 47 CFR § 64.1200(a)(2). This Court disagrees that Plaintiff's push of a button to hear about the free cruise was express consent to the CCL communication that shelters Defendant from TCPA liability.

The FCC's Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 state that "absent an established business relationship, the telemarketer must first obtain the prior express consent of the called party in order to lawfully initiate the call. Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the <u>prior</u> consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call." <u>In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 18 F.C.C.R. 14014, 14099 (July 3, 2001) (emphasis in original). The FCC reiterated this point later in the same report, stating that "a prerecorded message that contains language describing . . . a vacation destination . . . and asks the consumer to call a toll-free number to 'learn more,' is an 'unsolicited advertisement' under the TCPA if sent without the called party's express invitation or permission." <u>Id.</u> at 14098

14

n.477.  These interpretations are due deference.  See Chevron U.S.A., Inc., 467 U.S. at 842-45.

Courts have also held that a call recipient's act of pressing a button does not equate to "prior

consent."  See Reichenbach v. Chung Holdings, 159 Ohio App. 3d 79, 85 (Ohio App. 6 Dist.

2004) (reversing entry of summary judgment for defendant because, inter alia, the telephone call

advertisement was unsolicited "because the recipient of the call had to do an affirmative act

(press 1) in order to hear the actual sales pitch," and finding that an unsolicited advertisement

about the "availability" of a service resembled a direct unsolicited sales pitch); Charvat v.

Crawford, 155 Ohio App. 3d 161, 167 (Ohio App. 10 Dist. 2003) (reversing entry of summary

judgment for defendant on express consent issue, stating that as the TCPA's focus is the

"nuisance aspect of telemarketing," the law "should turn, not on the caller's characterization of

the call, but on the purpose of the message.  Thus, a prerecorded message that . . . asks the

consumer to call a toll-free number . . . is an unsolicited advertisement . . . ."); see also Margulis

v. P&M Consulting, Inc., 121 S.W. 3d 246 (Mo. App. ED 2003) (holding that a telemarketer's

argument that a consumer's participation in a robocall button-pressing survey "to determine

eligibility for a complimentary vacation package" was not an unsolicited advertisement when the

vacation-related sales pitch did not occur during the call: "The fact that the initial prerecorded

call was 'one step removed from the actual sales pitch' does not mean that the purpose of the call

was not ultimately meant to convey information about commercially available services.").

This Court finds the FCC's interpretation reasonable insofar as it makes no logical

difference given the TCPA's aim if Defendant made its full sales pitch regarding the "free

cruise" directly to Plaintiff in the robocall's principal text, or if Defendant, together with the

SRO, structured the robocall so that Plaintiff first had to listen to an unsolicited teaser before

pressing a button to hear the entire "free cruise" sales pitch.  Either way, the robocall achieved

the same imposition upon consumer privacy.  Plaintiff, whose telephone had previously been

free from all complimentary cruise chatter, now found himself thrust into the world of "free

cruises," with possibly required charges and discretionary add-ons.  See In re Rules &

Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014,

14018 (FCC July 3, 2003) (stating the TCPA's goal of protecting consumer privacy).  As the

FCC has stated, the consent must be made before the call; here, consent, to the extent it was

given at all, was given during the call.

In light of the foregoing, this Court rejects Defendant's argument for summary judgment

on this undisputed record that Plaintiff's pressing of a button to connect to Defendant at the end

of the robocall constituted express consent to the subsequent sales pitch about the "free cruise."

### iv.  This Court Rejects Defendant's Argument That There Is No Genuine Issue Of Material Fact Relating To Whether Defendant Initiated The Call For The Purposes Of Vicarious Liability Under The TCPA

Plaintiff's theory is that Defendant is vicariously liable for the SRO's initiation of the

robocalls containing both the political survey and the free cruise offer in furtherance of the

Marketing Plan Agreement.[5]  Docket No. 1, 41.  Defendant argues that that being the case,

"Plaintiff must provide evidence . . . that CLL controlled and directed the actions of the SRO.

There is not a single shred of evidence existing in this record which shows . . . how CCL was

involved in directing and controlling the manner and means of the subject call."  Docket No. 37.

This Court agrees with Defendant that some evidence must be shown of direction and control,

but this Court disagrees that it is lacking here.  Rather, the record demonstrates an issue of

---

[5] Defendant claims that Plaintiff never pleaded vicarious liability so that the Court should not consider its merits here, but the Complaint states that "one or more third parties acting on behalf of CCL" may have placed the call.  Docket No. 1.  This is sufficient notice of the vicarious liability theory.  Furthermore, Defendant cites to no authority for the proposition that vicarious liability must be in the complaint in order for it to serve as a theory of liability under a statute that was pleaded in the complaint.

material fact such that a jury on this record could conclude that Defendant directed and controlled the manner and means of the subject call.

A recent declaratory ruling by the Federal Communication Commission provides the logical foundation for this Court's conclusion that Defendant may be held vicariously liable for the SRO's initiation of the robocall in furtherance of the Marketing Plan Agreement.  The FCC stated that "vicarious seller liability under federal common law agency principles is . . . available for violations of section 227(b)."  In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C.R. 6574, 6586 (FCC May 9, 2013).  The FCC explained that:

> the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the Federal Trade Commission, or FTC noted, because '[s]ellers may have thousands of 'independent' marketers, . . . suing one or a few of them is unlikely to make a substantive difference for consumer privacy.' And as the Third Circuit determined in an analogous context, absent the application of agency-related principles, the seller (in this instance) 'would benefit from undeterred unlawful acts, and the statute's purpose . . . would go unrealized.'[6] Reading the TCPA to incorporate baseline agency-related principles imposing vicarious liability on sellers also advances Congress's intent that the Commission harmonize

---

[6] See Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1434 (3d Cir. 1994) (liability based upon agency principles is often appropriate under the Lanham Act).

its TCPA enforcement, to the extent possible, with that undertaken by the
FTC in connection with its Telemarketing Sales Rule. Under that Rule, the
FTC has taken the position that sellers are responsible for the violations of
their authorized dealers.

Id. at *12 (citations omitted).

This Court finds the FCC's interpretation reasonable and will not disturb it.  Most district
courts interpreting the TCPA have concluded that general tort principles such as agency and
vicarious liability are applicable to statutorily recognized torts under the TCPA.  See Bridgeview
Health Care Ctr. Ltd. v. Clark, 09 C 5601, 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013)
("Thus, the TCPA creates a form of vicarious liability making an entity liable when a third party
sends unsolicited communications on its behalf in violation of the Act.") (citing Glen Ellyn
Pharmacy v. Promius Pharma, LLC, No. 09-C-2116, 2009 WL 2973046, at *3 (N.D. Ill. Sept.
11, 2009)); In re Jiffy Lube Int'l, Inc., Text Spam Litig., 847 F. Supp. 2d 1253, 1257 (S.D. Cal.
2012) (holding that vicarious liability exists under the TCPA); Account Outsourcing, LLC v.
Verizon Wireless, 329 F. Supp. 2d 789, 805-06 (M.D. La. 2004) (holding that rule of statutory
construction makes explicit vicarious liability unnecessary and that a congressional tort action
implicitly includes the doctrine of vicarious liability); but see Mais v. Gulf Coast Collection
Bureau, Inc., No. 11-CV-61936, 2013 WL 1899616, at *13 (S.D. Fla. May 8, 2013) (holding that
TCPA does not permit vicarious liability).  "General principles of agency law form the basis of
vicarious liability" under the TCPA.  Suquilanda v. Cohen & Slamowitz, LLP, 2011 WL
4344044, at *4 (S.D.N.Y. Sept. 8, 2011).   "Under general principles of agency . . . to be liable
for the actions of another, the 'principal' must exercise control over the conduct or activities of
the 'agent.'"  Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1173 (9th Cir.
2006) (citing Restatement (Second) of Agency § 1 (1958)).  If a company were to be allowed to
avoid TCPA liability by merely hiring a different company to make its unlawful calls, the statute

18

would lose its deterrent effect.  Vicarious liability prevents this liability maneuvering.  See In re

Jiffy Lube, 847 F. Supp. 2d at 1256; Maryland v. Universal Elections, 77 F. Supp. 2d 408, 415

(D. Md. 2011).

The model contract submitted by Defendant provides for CCL to exercise significant

control over calls relating to "free" cruises.  All contracts require an exchange of benefits

between the parties.  Without an exchange that creates some mutuality of obligation, a contract

does not exist.  Instead, a transaction where one party gives another something of value without

remuneration is a gift.  Here, it is implausible to believe that the CCL/SRO agreement

memorializes a gift—there is no reason offered for a profit-driven entity such as CCL to gift

cruises to the SRO.  Instead, a logical reading of the contract is that CCL provided the "free"

cruises to the SRO in exchange for advertising to the recipients of the robocalls who took the

surveys, and, even of possibly greater value, a direct connection or introduction to the potential

buyer via the "transferred" call.  In reading a contract structured this way, it would be reasonable

to view the SRO as the agent of the CCL, from which vicarious liability may arise.  The

Marketing Plan Agreement lays out in detail what each contracting party expects to obtain from

the collaboration.  In the SRO's case, that expectation is that the "free cruise" will incentivize

participation in the survey.  Docket No. 38-1 at 14.  In Defendant's case, that expectation appears

to be that inclusion of its message in the robocall will drive consumer registrations for

"complimentary" cruise certificates, which in turn will help Defendant to sell the add-ons listed

in Attachment 1 to the contract.[7]  Id. at 14, 21.

---

[7] Defendant, which the Court notes is a corporation and as such beholden to its shareholders to
generate value, claim various times that it "is only involved with the SROs because the SROs
approached CCL seeking to provide incentives to those SROs for the individuals who participate
in the surveys."  Docket No. 38 ¶ 12; Docket No. 37 ("CCL entered into a contract with a [sic]
SRO solely to provide an incentive to the political survey participants.").  Despite its duty to its

Moreover, Defendant exerted control over the delivery of its message to potential cruise recipients.  It is significant that the Marketing Plan Agreement requires that the SRO "provide [Defendant] with a general description of each political survey campaign and <u>an</u> <u>exact</u> <u>script</u> <u>along</u> <u>with</u> <u>an</u> <u>exact</u> <u>audio</u> <u>file</u> <u>of</u> <u>each</u> <u>survey</u>."  <u>Docket No. 38-1</u> at 14 (emphasis added).  This Court finds that a reasonable factfinder could construe from this contractual provision that Defendant had veto power—in other words, control—over the robocall content the SRO was making in furtherance of the contract's goal of incentivizing political surveys and promoting Defendant's "free" cruises.[8]

Section 227(b)(1)(B), United States Code, Title 47, assigns civil liability to a person who "initiates" a prohibited call.  <u>See</u> 47 U.S.C. § 227(b).  Defendant invokes <u>Applestein v. Fairfield Resorts</u>, No. 0004, 2009 WL 5604429, at *5 (Md. App. July 8, 2009), in support of its argument that it cannot be held to have initiated the call at issue here, saying that the statutory interpretation issue in <u>Applestein</u> is "nearly identical to the one at bar."  In <u>Applestein</u>, the defendant hired a third party to make calls on its behalf to persuade guests to come to the defendant's resort.  <u>Id.</u> at *1.  That is where the similarity to the present case ends.

---

shareholders, Defendant insists it gave away its product for no reason, not even as a charitable or political donation.  IN any event, the list of "free cruise" add-ons sale items contemplated in the Marketing Plan Agreement's Attachment 1 belies Defendant's assertion that Defendant had no commercial motivation.  Indeed, if there was no commercial motivation, the entire Marketing Plan Agreement appears to lack any consideration for Defendant.

[8] Defendant cites to <u>Lary v. VSB Fin. Consulting, Inc.</u>, 910 So.2d 1280, 1283 (Ala. Civ. App. 2005), for its holding that one defendant could not be found vicariously liable for the fascimiles sent by a third party because there was no evidence adduced "tending to show direct involvement on the part of [the defendant] in the decision to send, or in the sending of, the pertinent advertisement."  <u>Lary</u> does not work in Defendant's favor insofar as there is evidence of Defendant's involvement or control here by virtue of the Marketing Plan Agreement's plain language.  Furthermore, the undersigned notes that <u>Lary</u> "reach[ed] a contrary conclusion with respect to [a second defendant]" because evidence showed that that defendant hired a third party to assist in promoting the defendant's business.  <u>Id.</u> Therefore, while Defendant directed the Court to <u>Lary</u> in support of its argument, <u>Lary</u> in fact supports Plaintiff's position.

Contrary to Defendant's description, <u>Applestein</u> is inapposite.  In <u>Applestein</u>, the defendant expressly told the third party that it was not to use robocalls.  The plaintiff was therefore not able to prove that the robocalls were made in furtherance of the defendant's contract with the third party.  <u>Id.</u> at *5.  In the instant case Defendant contractually authorized the robocall political surveys that would bring their "free cruises" to consumers' attention.  <u>Docket No. 38-1</u> at 14 (stating that the SRO wants "to incentivize and thus increase survey participation by providing survey takers certain complimentary products and/or services" and that Defendant "Caribbean desires to make available complimentary incentives to survey takers . . . [f]or the purposes of this Agreement, Caribbean will make available complimentary three day/two night cruise certificates (full details regarding this Survey incentive appear in Attachment 1. . . .").

Defendant argues that another section of the Marketing Plan Agreement states that "[n]either party is an agent of the other party and has no authority to represent the other party with regard to any matter."  <u>Id.</u> at 15.  Defendant's incorporation of a legal conclusion into the contract does not alter that that legal determination must be made with reference to facts.  It is for a factfinder to decide whether the Marketing Plan Agreement or anything else in the record proves that Defendant exercised such control over the SRO's robocalls such that Defendant can be vicariously liable for the alleged TCPA violations effected thereby.

Defendant points out that Plaintiff's Statement of Undisputed Material Facts concedes that "CCL does not have any control as to how telephone calls are made, when telephone calls are made or to whom telephone calls are made.  Pl. St. ¶ 21.  Defendant argues that this means that Plaintiff must lose on the issue of vicarious liability.  The Court disagrees.  Just a few paragraphs earlier, Plaintiff's Statement vigorously disputed that "CCL does not direct or control

the manner and means of the SRO's business, or the surveys they conduct."  Pl. St. ¶ 17.

Plaintiff stated that he

> disagreed that CCL had no role regarding the manner in which the
> SROs referred to CCL's 'free cruises,' in that the only reason that
> the SROs refer to 'free cruises' is because the contracts between
> CCL and the SROs require the SROs to refer to 'free cruises.'

Pl. St. ¶ 17.  Plaintiff's Statement of Undisputed Facts could hardly make it any clearer that there

are genuine issues of material fact relating to CCL's direction and control over the "free cruise"

content of the robocalls.  As for Defendant's flagging of Plaintiff's later concession that CCL has

no control over the how, when or to whom aspects of the robocalls, the Court understands

Plaintiff's Paragraph 17 to be referring to logistical aspects of the calls such as what software

might be used to autodial.  That is not what is at issue in this litigation.  The thrust of Plaintiff's

entire opposition to Defendant's summary judgment motion is that Plaintiff is vicariously liable

by virtue of Defendant's control of the overall calling project such that the Court cannot credibly

interpret Plaintiff's paragraph 17 to make and abandon his argument simultaneously.

Accordingly, it is clear to the Court that Plaintiff's Statement of Undisputed Material Facts raises

sufficient questions about Defendant's control over the substantive content of the robocalls and

even the very fact that the robocalls were going to be made.  The record plainly shows that there

is a genuine issue of material fact as to these vicarious liability questions, as discussed above.

The Court's conclusion that there is a genuine issue of material fact on the question of

vicarious liability is consistent with other cases addressing the question.  In Birchmeier v.

Caribbean Cruise Line, Inc., 2012 U.S. Dist. LEXIS 182536, at *3 (N.D. Ill. Dec. 28, 2012), the

court denied a motion to dismiss premised on Defendant's same argument in this case, i.e., that it

did not initiate the robocall because they had contracted with some other party to do it for them.

The Birchmeier Court stated that

> The Court [ ] rejects defendants' contention that liability attaches under the TCPA only to the party that actually placed the call.  To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones.  Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free.  A Congressional enactment that permitted this would be absurd indeed.  Fortunately this is not the law under the TCPA.

Id.; [9] see Bridgeview Health Care Ctr. Ltd. v. Clark, 2011 WL 4585028, at *4-5 (N.D. Ill. Sept. 30, 2011) (denying a summary judgment motion in a TCPA case about unsolicited faxes,  stating that general tort-related vicarious liability rules might apply even in the event that the FCC had not expressly stated that they did, and holding that "defendants cannot escape liability simply by hiring an independent contractor to transmit unsolicited fascimilies on their behalf").

Defendant cannot achieve through creative contracting what it cannot achieve directly without incurring TCPA liability, i.e., robocall promotion of its "free cruises," with their goods-and-services add-on sales.  Defendant's Marketing Plan Agreement with the SRO reflects precisely the sort of business arrangement contemplated and found to violate the TCPA by the FCC and the Birchmeier court, i.e., an attempt to evade TCPA liability through creative description of a robocall marketing plan.  Many parts of the Marketing Plan Agreement pay lip service to TCPA compliance when the very substance of the project plainly poses TCPA questions.  For example, the Marketing Plan Agreement announces that "[a]t all times, the parties agree that SRO survey messages must not be commercial in nature," as if stating those words could convert what are

---

[9] Three of the attorneys representing Defendant in this case were also Defendant's counsel in Birchmeier.  In light of the dearth of TCPA case law on this particular issue, this Court would have appreciated it if Defendant's attorneys had mentioned Birchmeier in their briefing.

arguably commercial robocalls into non-commercial messages. A contract provision reciting a legal conclusion is not admissible evidence on the question of whether the legal conclusion is correct.

Defendant cites to Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012), for the proposition that courts may not allow "on behalf of" liability for 47 U.S.C. § 227(b)(1) actions. Thomas does indeed stand for this proposition. However, this Court's decision to allow vicarious liability theory to proceed in this 47 U.S.C. § 227(b)(1) action today is not inconsistent with Thomas. The Thomas Court itself said that while statutory "on behalf of" liability (which amounts to a strict liability standard) is not applicable in 47 U.S.C. § 227(b)(1) actions,[10] general tort vicarious liability (requiring evidence of agency and control) is applicable in 47 U.S.C. § 227(b)(1) actions. Id. ("This Court concludes, therefore, that a party can be held liable under Section 227(b)(1)(A)(iii) directly . . . or vicariously, such as, if it was in an agency relationship with the party that sent the text message."). Defendant's argument under Mey v. Pinnacle Sec., LLC, 2012 WL 4009718, at *4-5 (N.D. W.Va. Sept. 12, 2012), is also irrelevant to this Court's vicarious liability finding for the same reason—Mey disallowed "on behalf of" liability for 47 U.S.C. § 227(b) claims but permitted vicarious liability. ("While strict liability does not attach, but rather must be premised upon some control over the calling entity, entities with the ability to control whether calls on their behalf are made within the confines of the law or violate the Act will still be held liable for calls made on their behalf.").

Finally, Defendant argues that Mais v. Gulf Coast Collection Bureau, Inc., No. 11-CV-61936, 2013 WL 1899616, at *12 (S.D. Fla. May 8, 2013), held that vicarious liability does not

---

[10] In brief, the Thomas Court stated that "on behalf of" liability is inapplicable in 47 U.S.C. § 227(b)(1) actions because whereas 47 U.S.C. § 227(c)(5), a different subsection of the TCPA, authorizes "on behalf of" liability, expressly authorizes "on behalf of" liability in its statutory language, 47 U.S.C. § 227(b)(1) does not mention it. Id. at 1084.

apply in claims brought under 47 U.S.C. § 227(b).  Defendant is correct that this is <u>Mais</u>'s

holding; however, this Court declines to follow <u>Mais</u> because that case conflated TCPA statutory

"on behalf of" liability with common-law tort vicarious liability in disallowing vicarious liability

under 47 U.S.C. § 227(b): "[T]he Court does not see how [vicarious liability] can apply where,

as here, Congress has specifically provided for vicarious liability in one part of the statute [, 47

U.S.C. § 227(c)(5)], but not in the other."  <u>Id.</u>  However, as we have seen in <u>Thomas</u> and <u>Mey</u>,

both of which discuss clearly the differences between the two doctrines, common-law vicarious

liability is a different legal creature than statutorily-created "on behalf of" liability.  <u>See Thomas</u>,

879 F. Supp. 2d at 1084-85; <u>Mey</u>, 2012 WL 4009718, at *4-5.  As a result, this Court believes

that the omission of "on behalf of" liability from the text of 47 U.S.C. § 227(b)(1) has no bearing

on whether vicarious liability principles apply.

In light of the foregoing, this Court rejects Defendant's argument that there are no

genuine issues of material fact relating to whether Defendant initiated the "free cruise" call for

the purposes of vicarious TCPA liability.

## IV.    CONCLUSION

For the reasons discussed above, I respectfully recommend that the District Judge **find as**

**moot** Defendant's motion to strike Plaintiff's Declaration and related exhibits, as this Court has

not considered those papers in writing this report and recommendation.

For the reasons stated above, Defendant's three arguments are not supported by the law

or record: (1) that the "free cruise" message was not made with a commercial purpose; (2) that

the "free cruise" message is exempt from the TCPA because it was coupled with a political

survey; and (3) that Plaintiff gave express consent to the "free cruise" sales pitch when he

pressed a button to connect to Defendant's live representative.  As to Defendant's fourth

argument that it did not initiate the call as a matter of law because the SRO did, there is a

genuine issue of material fact as to whether Defendant directed and controlled the "free cruise"

message's content and the very fact of its delivery.

The undersigned respectfully recommends that the District Judge **deny** Defendant's

motion for summary judgment.[11]

## V.   OBJECTIONS

This report and recommendation will be filed electronically and a copy was sent by mail,

on August 26, 2013, to Plaintiff Todd C. Bank at 119-40 Union Turnpike, Fourth Floor, Kew

Gardens, NY 11415.  Any objections to this Report and Recommendation must be filed in

accordance with the Individual Rules of the Honorable John Gleeson by September 13, 2013.

Failure to file objections within the specified time waives the right to appeal.  See 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b).

Dated: August 26, 2013
     Brooklyn, New York

_____
           /s/
        VERA M. SCANLON
     UNITED STATES MAGISTRATE JUDGE

---

[11] As for the three Defendant arguments that the undersigned recommends that the District Judge reject on undisputed facts, the undersigned notes that there is a possible corollary finding in each instance.  First, if the Court rejects on undisputed facts that the "free cruise" call was not made for a commercial purpose, then it seems that a legal finding that it was made for a commercial purpose could be entered.  Second, if the Court rejects on undisputed facts that the "free cruise" message is not TCPA-exempt because it was coupled with a political survey, then it seems that a legal finding that the TCPA applied to the dual-purpose call could be entered.  Third, if the Court rejects on undisputed facts that Plaintiff's pressing of a button during the robocall to hear more about the "free cruise" does not constitute express consent, then it seems that a legal finding could be entered to that effect.  However, as Plaintiff did not cross-move for summary judgment on these issues to remove them from jury consideration at trial, Defendant did not have notice that it was defending against such possible findings.  However, FRCP 56(f) allows the Court, "[a]fter giving notice and a reasonable time to respond, [to] grant summary judgment for a nonmovant . . . [or] consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  FRCP 56(f).  The trial court could require FRCP 56(f) submissions before trial if that would simplify any trial.