UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TODD C. BANK, Individually and on
Behalf of All Other Similarly Situated,

CASE NO.: 1:12-cv-00584-JG-VMS

    Plaintiff,

v.

CARIBBEAN CRUISE LINE, INC.,

    Defendant.

_____/

### CARIBBEAN CRUISE LINE, INC.'S RENEWED PRE-TRIAL STATEMENT OF CLAIMS AND DEFENSES

Pursuant to this Court's Rules and Pre-Trial Procedures,[1] Caribbean Cruise Line, Inc. ("CCL") files this renewed pre-trial statement of claims and defenses for the trial in this matter scheduled for August 13, 2014.

    I.    BY CLAIM, A DETAILED STATEMENT REGARDING DAMAGES AND OTHER RELIEF SOUGHT

Plaintiff's Complaint attempts to assert one (1) cause of action for a purported violation of section 227(b)(1)(B) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA"). His Complaint is based on his alleged receipt of one (1) telephone call on January 19, 2012[2] and he is seeking statutory damages of $500, or $1,500 if he can demonstrate that the

---

    1.    *See* Section 4.B. of this Court's Motion and Individual Practices.
    2.    Plaintiff, when he filed his Complaint, sought to assert this action as a class action. Plaintiff identified himself as both named class representative and class counsel. Plaintiff, however, never filed a motion to have the class certified. As set forth in greater detail below, CCL did not make or initiate a telephone call to Plaintiff on January 19, 2012. Causing further confusions, however, is the fact that Plaintiff, in his Answers to Interrogatories, states that the survey call he supposedly received was on January 20, 2012, not January 19, 2012.

actions of CCL were knowing and willful.[3]

The monetary portion of Plaintiff's claim was settled at the pretrial conference conducted by the Court on January 17, 2014. At that time, Plaintiff advised that in addition to monetary relief, he was seeking injunctive relief. Though Defendant's counsel advised that it wished to conduct the trial, the Court instructed the Plaintiff to submit the issue of injunctive relief on the papers. Thereafter, Plaintiff filed his Motion for Injunctive Relief, which was denied by the Court on May 12, 2014. Having been denied the relief, the matter has been fully and finally resolved and no trial on the merits should proceed.

Nonetheless, the Court has set a bench trial on the issue of the likelihood of future violations of the TCPA based upon the conduct alleged to be at issue in the Complaint, *i.e.*, an alleged unsolicited telephone call to the Plaintiff by a survey company conducting a political survey and offering the opportunity to receive a complimentary cruise from Defendant in exchange for Plaintiff's participation in that survey. Plaintiff, however, has yet to prevail on the merits of an underlying violation of the TCPA and thus, any inquiry into the likelihood of future violations is premature and not warranted.

---

3. While Plaintiff's "Prayer For Relief" generally states that he is also seeking "an Order … enjoining Defendant from violating 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2)," the Complaint is devoid of any cause of action for permanent injunctive relief and does not set forth a single factual allegation supporting any element of, or entitlement to, permanent injunctive relief. Moreover, the general request for an injunction not to violate the statute does not define in any way any underlying conduct sought to be enjoined. As a result of the foregoing, the Complaint fails to put CCL on notice of any actual claim for permanent injunctive relief and no such claim can be pursued at trial. *See* Fed. R. Civ. P. 8. Finally, even assuming the Court considers whether such a remedy is appropriate, such a request is moot in light of the fact that CCL ceased providing its complimentary cruise to third party research organizations conducting political surveys in or around July 2012. It is Plaintiff's vague request for injunctive relief that is apparently going to be tried on August 13, 2014 – though Plaintiff has yet to prevail on the underlying merits of his TCPA cause of action.

Case No. 1:12-cv-00584-JG-VMS
*CCL's Renewed Statement of Claims and Defenses*

II.  **A STATEMENT OF THE ELEMENTS OF PLAINTIFF'S CLAIM AND CCL'S DEFENSES, TOGETHER WITH A SUMMARY OF THE FACTS RELIED UPON TO ESTABLISH EACH ELEMENT**

   **A. Elements of Plaintiff's TCPA Claim.**

47 U.S.C. § 227(b)(1)(B) provides:

(b)  Restrictions on use of automated telephone equipment

   (1)  Prohibitions

   It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

   (B)  to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);[4]

Case law interpreting section 227(b)(1)(B) requires a plaintiff to establish (1) that the defendant made the call(s) to a residential telephone line; (2) that the plaintiff was charged for the call; and (3) that the call was made using an automatic telephone dialing system or an artificial or prerecorded voice.[5]

CCL is unaware of what facts Plaintiff will use to establish that CCL is liable for a violation of section 227(b)(1)(B) of the TCPA. Plaintiff did not take any depositions in this case and has only produced call detail records of calls he allegedly made and/or received in August 2012 (not January 19, 2012 when he alleges to have received the only telephone call at issue in this case). Moreover, Plaintiff has not only admitted that the telephone number at which he allegedly received the call is used for conducting his business (a law practice), but he has also

---

4.  47 U.S.C. § 227(b)(1)(B).
5.  *See Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012); *Weitzner v. Iridex Corp.*, No. 05 CV 1254(RJD), 2006 WL 1851441, *2 (E.D.N.Y. June 29, 2006); *see also Applestein v. Fairfield Resorts, Inc.*, 2009 WL 5604429, No. 0004, Sept. Term, 2007 (Md. July 8, 2009); *Knutson v. Reply!, Inc.*, 2011 WL 291076 (S.D. Cal.); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 898, 2012 WL 983774 (N.D. Ill. Mar. 20, 2012).

admitted that CCL did not make the alleged telephone call; an unknown third party made the telephone call.

### B. Statement of the Elements of CCL's Defenses, Together with a Summary of the Facts Relied Upon to Establish Each Element.

#### i. Summary of Facts.

Plaintiff alleges that he received one (1) telephone call on his residential telephone line on January 19, 2012.[6] According to Plaintiff, the call he received was a prerecorded voice that stated that if he were to complete a political survey, he would be given an opportunity to hear about or take a cruise.[7] The substance of the survey, according to Plaintiff, was political in nature and the questions asked were regarding the president (of the United States), deficit and economy.[8] Plaintiff freely participated in the political survey call made by some unidentified entity; he listened to the questions and pressed the corresponding buttons on the keypad to register his responses and, ultimately, consented to be transferred to hear about the complimentary cruise.[9] In Plaintiff's Response to Defendant's Statement of Material Facts In Support of Defendant's Motion for Summary Judgment, Plaintiff admitted that some unidentified third party made the call about which he complains, not CCL.[10]

---

6. DE 1. However, in his deposition, Plaintiff admitted that the telephone line that received the alleged telephone call is used for his business. He also answered interrogatories stating the telephone call was allegedly received on January 20, 2012.
7. DE 38, Def's SOF ¶ 2; DE 40 – Pl's. Rsp. SOF admitted.
8. DE 38, Def's SOF ¶ 3; DE 40 – Pl's. Rsp. SOF admitted.
9. DE 38, Def's SOF ¶ 4; DE 40 – Pl's. Rsp. SOF admitted.
10. DE 38, Def's SOF ¶ 6 ("After he was transferred to a live representative to obtain his free cruise for participating in the political survey, Plaintiff was advised that a third party place the political survey call, not CCL"); DE 40, p. 2 – Pl's. Rsp. SOF to Def's SOF ¶ 6 ("Plaintiff agrees with Defendant's statement"); DE 38, Def's SOF ¶ 7 ("Plaintiff, however, is unable to identify the actual entity that made the political survey call he [allegedly] received on January 19, 2012; instead Plaintiff generally refers to various "third parties".); DE 40, p 2 – Pl's. Rsp. SOF to Def's SOF ¶ 7 ("Plaintiff agrees with Defendant's statement").

Case No. 1:12-cv-00584-JG-VMS
*CCL's Renewed Statement of Claims and Defenses*

    **ii.**     **Defenses.**

    1. <u>CCL did not "initiate" the alleged telephone call to Plaintiff</u>.

CCL did not "initiate"[11] any political survey calls, let alone a specific political survey call to Plaintiff. Indeed, Plaintiff concedes that CCL did not initiate the call to him in his Statement of Facts in response to CCL's Motion for Summary Judgment.[12]

Courts addressing the meaning of the terminology used by Congress in the TCPA have agreed that direct liability can only exist against the actual ***"maker"*** of the call(s) at issue.[13] In *Mais*, after a lengthy statutory interpretation analysis, the court concluded that there is no strict "on behalf of liability" under the TCPA and further, that principles of vicarious liability are not applicable. Rather, liability under section 227(b)(1)(A), the section dealing with calls to cellular

---

    11.     As it relates to the term "initiate" set forth in section 227(b)(1)(B), the statutory section at issue in this case, the Court of Special Appeals in Maryland interpreted the term "initiate" using its ordinary and natural meaning by reference to the dictionary. *Applestein, supra*. "Initiate" means to "begin or to set going … originate." *Id*. at *1 In *Applestein*, the plaintiff received two pre-recorded telephone calls from a third party inviting him to see a tour of Fairfield's hotels in exchange for incentives including a free 4-night hotel stay, free dinners, and spending money. *Id*. During the course of discovery, it was revealed that the calls Applestein received were actually made by Tele-Max, a telemarketing agency hired by Fairfield to induce consumers like Applestein to tour its resorts. The court found, after the presentation of Applestein's case in chief, that "[Applestein] [was] unable to prove that … Fairfield initiated these calls as would be required for liability under the statute." *Id*. Specifically, the court reasoned that "[Applestein] has proven that [the calls] were made by [Tele-Max], that [Tele-Max] had a contract with Fairfield .. and that the calls were made in furtherance of that contract, but I am not able to find [Applestein] is able to prove that … Fairfield initiated these calls as would be required for liability under this statute." *Id*. The Court of Special Appeals affirmed the holding of the circuit court because "[c]learly, [Tele-Max] made the calls, not Fairfield." *Id*. at *6.

    12.     Plaintiff readily admits this simple, yet case dispositive, fact. *See* FN 10, *supra*.

    13.     *See Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226 (S.D. Fla. 2013); *Hurst v. Mauger*, No. 11-C-8400, 2013 WL 1686842 (N.D. Ill. April 16, 2013); *Bridgeview Health Care Center Ltd. v. Clark*, No. 09-C-5601, 2013 WL 1154206 (N.D. Ill. March 19, 2013); *Mey v. Pinnacle Security, LLC*, Civil Action No. 5:11CV47, 2012 WL 4009718, *4 (N.D. W. Va. Sep. 12, 2012) (finding that Section 227(b)(3) imposes liability only on the "maker" of the call); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (same).

telephone phones,[14] can only exist as against the actual "maker" of the call. The court stated "it will employ the statute as written and find that only those who make calls … may be held liable.[15] In so ruling, the court explicitly reasoned that "Congress provided for 'on behalf of' liability only in section 227(c)(5), not in section 227(b)(1)(A)."[16]

Because CCL did not "initiate" the call that Plaintiff alleges he received, a TCPA cause of action against CCL cannot stand.[17]

> 2. <u>The alleged telephone call was apparently made to a telephone number that Plaintiff uses as his business telephone line</u>.

Section 227(b)(1)(B) only prescribes liability against the maker of a telephone call (otherwise in violation of the statute) to a ***residential*** telephone line. The TCPA does not contain a similar section for telephone calls made to ***business*** telephone lines. Indeed, section 227(b)(2)(A) demonstrates that Congress intentionally did not establish legislation within the TCPA for telephone calls made to businesses.[18] This is because the TCPA was implemented and designed to assist consumers in avoiding receipt of unwanted telemarketing calls to their residences.[19] The TCPA's primary purpose was and remains protecting individuals from telemarketing activity and ensuring the smooth transmission of emergency communications; it

---

14. This statutory section is identical to the section at issue here with the exception of the use of the word "initiate" as opposed to "make."
15. *Mais*, 944 F. Supp. 2d at 1243.
16. *Id*. at 1250. Nor did the Court find that the FCC guidance was entitled to any deference in light of the clear and unambiguous statutory intent.
17. *Id*.
18. 47 U.S.C. § 227(b)(2)(A) ("The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—(A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent;"). Notably, no such regulations have been implemented.
19. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Rcd 03-153; *Charvart v. Farmers Ins. Columbus, Inc.*, 178 Ohio App. 3d 118, 2008-Ohio-4353, 897 N.E.2d 167 (10th Dist. Franklin County 2008); *Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280 (Nev. 2006).

"targets calls that are the source of consumer complaints – telemarketing calls place to the home."[20]

Here, Plaintiff admits that the telephone line ((718) 520-7125) at which he received the alleged political survey telephone call is used for his business (a law practice), and that the call was allegedly received on a Thursday at 1:59 p.m. (normal business hours). Since the call about which he complains was received during normal business hours on the phone Plaintiff uses for his business, no violation of section 227(b)(1)(B) can exist.

> 3. <u>The call as described by Plaintiff was not made for a commercial purpose and is exempt from an action under the TCPA because its activities qualify as research, market surveys, political polling or similar activities which do not involve solicitation.</u>

Even assuming, *arguendo*, that Plaintiff had any evidence of CCL's involvement in the initiation of the alleged telephone call, or that the call was made to his residential telephone line, the call itself is exempt from the strictures of the TCPA since it was not made for a commercial purpose or as an unsolicited advertisement.[21] The call allegedly received by Plaintiff is a political survey exempt under the TCPA and the regulations promulgated thereunder. The TCPA states that it is unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, *unless the call is initiated for emergency purposes or is exempt by rule or order by the [Federal Communications] Commission … ."*[22]

---

20. *See In the Matter of Petition for Declaratory Ruling Regarding Non-Telemarketing Use of Predictive Dialers Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 13031, 13041 (2012) citing 137 Cong. Rec. 18123 (1991).
21. DE 38, Def's SOF ¶¶ 22-25; *see* 47 U.S.C. § 227(a)(4); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG BGS, 2013 WL 1629084, *5 (S.D. Cal. Apr. 16, 2013).
22. 47 U.S.C. § 227(b)(1)(B).

The FCC promulgated regulations exempting from the TCPA calls made for emergency or non-commercial purposes, calls made for a commercial purpose but do not include or introduce an "unsolicited advertisement" or "telephone solicitation," calls "made to any person with whom the caller has an established business relationship at the time the call is made," and calls made by or on behalf of tax-exempt nonprofit organizations.[23] Moreover, the FCC has specifically acted to exempt political polls, such as those alleged by Plaintiff to have occurred in this case, from the requirements of the TCPA.[24] According to the FCC, the exemption for non-commercial calls includes calls conducting research, market surveys, and *political polling or similar activities* which do not involve solicitation.[25]

Here, Plaintiff admitted in deposition that the survey call involved a "political survey."[26] Moreover, when examining Plaintiff's deposition testimony in greater detail, it is clear that whatever entity initiated the call Plaintiff alleges to have received was to conduct a political survey, in that the substance of the call was to ask questions about the president, the deficit and the economy; there was no effort by the caller to encourage or advertise the purchase or rental of,

---

23. *See* 47 C.F.R. § 64.1200(a)(2). The use of the term "or" in the regulations shows that the FCC intended to exempt any call that may fall within any one of the enumerated categories.
24. *See* 47 C.F.R. § 64.1200(a)(3)(ii).
25. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8774 (1992). The TCPA defines the term "telephone solicitation" as "the initiation of a telephone call or message ***for the purpose*** of encouraging the ***purchase or rental*** of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization. 47 U.S.C. § 227(a)(4). Similarly, the TCPA defines an "unsolicited advertisement" as "any material ***advertising the commercial availability or quality*** of any property, goods, or services which is transmitted to any person …". 47 U.S.C. § 227(a)(5).
26. DE 38, Def's SOF ¶ 3.

availability or quality or, investment in, property, goods, or services.[27] The call that Bank described was not made for a "commercial purpose", but rather, by or on behalf of a tax-exempt, non-profit entity conducting a political survey.

> 4. <u>If This Court Finds that Principles of Vicarious Liability Are Applicable to Establish Liability Against a Third Party Pursuant to the TCPA, Plaintiff Has Not Pleaded and Cannot Establish Any Such Theory</u>.

Though not pleaded, for the first time in response to CCL's Motion for Summary Judgment, Plaintiff contended that CCL could be held liable for a TCPA violation by virtue of a theory of vicarious liability. First, as stated above, such a theory is not asserted in the Complaint and thus, Plaintiff cannot proceed to trial on an unpleaded theory or cause of action.[28] Second, the TCPA, as described in section (B)(1), *supra*, does not allow the imposition of liability against anyone other than actual maker of the telephone call. Third, even assuming this Court finds that

---

27. 47 U.S.C. § 227(a)(4) and (5). Plaintiff may argue that the offer of a complimentary cruise somehow transforms the purpose of the political survey call into a "commercial" call, but this contention is misplaced. Plaintiff cannot identify the entity that allegedly called his business on January 19, 2012. Even if he could, he does not identify any "property, goods or services" that were either advertised or offered for purchase during the call. Instead, he refers to his participation in the political survey and then his voluntary transfer to a third party (CCL) in the hopes of receiving a complimentary cruise. Plaintiff does not allege that CCL offered to "sell" him anything. Rather, Plaintiff merely complains that the "complimentary" cruise is not "complimentary" because CCL discloses to those who select to be transferred that they are responsible for port fees (taxes), along with anything they wish to purchase while on board the cruise (CCL does not own the cruise ship). The foregoing does not constitute the offer to purchase anything and the Federal Trade Commission ("FTC") expressly authorizes CCL to state that such an offer is "free", as long as these ancillary charges (none of which go to CCL) are disclosed. *See* 16 CFR § 310.3(a)(1)(v); 16 CFR § 251.1. How could CCL be liable for a practice specifically authorized by the FTC?

28. *See* Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (abrogated on other grounds by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)) (confirming the provisions of Rule 8 that a claim must be set forth in the pleadings in order to give a defendant fair notice of the nature of the plaintiff's claim); *Jeter v. Bd. Of Educ. Of the City of New York*, CV-99-2537(DGT), 2004 WL 5584463 (E.D.N.Y. Mar. 30, 2004) (refusing to consider Jeter's claim that he was denied reasonable accommodations because the issue was raised for the first time in the plaintiff's memorandum of law in support of the plaintiff's opposition to the defendant's motion for summary judgment), citing *Beckman v. U.S. Postal Serv.*, 79 F.Supp.2d 394, 407-08 (S.D.N.Y. 2000).

general principles of vicarious liability apply, certain elements of such a theory of liability must be pleaded and proved – neither of which exist in this case.

Plaintiff will surely urge that the FCC's recent declaratory ruling requires this Court to interpret the TCPA as allowing vicarious liability; he will also likely urge that the FCC declaratory ruling changes the standard for vicarious liability in TCPA actions.[29] The FCC, however, does not make law; this guidance lies beyond its expertise, and is contrary to well-established agency principles.[30] Moreover, if the FCC's construction is inconsistent with the statute's plain language, such as the case here, there is no entitlement to deference.[31]

Generally speaking, absent express language, a federal statute incorporates traditional common-law principles of vicarious liability.[32] The federal common law of agency is the body of law that has developed precisely to answer the question "when is one liable for the wrongful acts of another?" Such an analysis is consistent with the principles espoused by the courts that have considered this issue, wherein each found not only that no direct liability exists, but also that any liability placed upon the non-calling party can only attach upon proof of sufficient evidence of direction and control over the party making the calls.[33] Under an actual agency analysis, not the

---

29. *See In the Matter of Joint Petition Filed by Dish Network, LLC, et al*., 28 F.C.C.R. 6574, 6586 (FCC May 8, 2013).
30. *NLRB v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 19*, 154 F.3d 137, 141 (3d Cir. 1998). Where "an agency has promulgated a regulation outside the scope of its specialized knowledge, courts will not defer to it." *Murphy Exploration & Prod. Co. v. DOI*, 252 F.3d 473, 479 (D.C. Cir. 2001). *See also Johnson v. Railroad Ret. Bd.*, 969 F.2d 1082, 1088 (D.C. Cir. 1992).
31. *See Mais*, 944 F.Supp.2d at 1238; *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
32. *See Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 806 (M.D. La. 2004) (holding that "congressional tort actions," such as those authorized under the TCPA, "implicitly include the doctrine of vicarious liability, whereby employers are liable for the acts of their agents and employees").
33. *See, e.g.*, *Taco Bell*, 879 F. Supp. 2d at 1084 ("[t]his Court concludes, therefore, that a party can be held liable under Section 227(b)(1)(A)(iii) directly if it personally "makes" a

FCC's mutation of agency law, there will be no evidence to establish this relationship between CCL and the unknown entity that allegedly called Plaintiff. Since it is undisputed that an unknown third party made the call, not CCL, CCL cannot be held "vicariously liable" under the section 227(b)(1)(B) of TCPA.[34]

If a theory of vicarious liability is allowed to proceed, Plaintiff must provide evidence of vicarious liability; such as proof that CCL controlled and directed the actions of the entity that initiated the alleged telephone call. There is no evidence in this record which shows what entity actually made the call, let alone what relationship CCL has to any such entity, or how CCL was involved in directing and/or controlling the manner and means of the subject call. Absent evidence that one had supervised, directed, or controlled the injurious conduct at issue, there cannot be an agency relationship or vicarious liability.[35] No "on behalf of" liability exists under

---

call in the method proscribed by the statute, ***or vicariously, such as, if it was in an agency relationship with the party that sent the text message***."); *Mey*, 2012 WL 4009718 at *5 ("[i]n order to prevail under the [agency/vicarious liability] theory, Mey must show that the actual caller 'acted as an agent' of Pinnacle, 'that[Pinnacle] controlled or had the right to control them and, more specifically, the manner and means of the [solicitation] campaign they conducted.'"); *Applestein*, 2009 WL 5604429 at *7 (concluding that Fairfield could not be held vicariously liable for the pre-recorded phone calls "initiated" by Tele-Max under a principal-agent relationship where the record reflected that the Fairfield's "control", if any, was limited to approving the scripts used by Tele-Max); *Lary v. VSB Fin. Consulting, Inc.*, 910 So. 2d 1280, 1283 (Ala. Civ. App. 2005) (refusing to impose liability upon a company's promoter where there was no evidence of direct involvement in the decision to send, or in the sending of, the allegedly prohibited facsimiles).

34. DE 38, Def's SOF ¶¶ 6, 18, 19, 20, 24.
35. *Terrano v. Fine*, 17 A.D.3d 449, 793 N.Y.S.2d 451 (2005); *Sikorski v. Springbrook Fire Dist. of Town of Elma*, 225 A.D.2d 1041, 639 N.Y.S.2d 226, 227 (1996); *see also Boss v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 567 F. Supp. 845, 847 (N.D.N.Y. 1983) *aff'd sub nom. Boss v. Int'l Boilermakers*, 742 F.2d 1446 (2d Cir. 1983) ("The elements of common law agency are thus: (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal. H.G. REUSCHLEIN AND W.A. GREGORY, AGENCY AND PARTNERSHIP 11 (1979). The element most essential to the demonstration of any agency relationship is that of "control.").

the statute,[36] judgment should be granted in favor of CCL. Under New York law, an agency relationship only exists if the following elements are present: "(1) manifestation by the principal that the agent shall act for him; (2) the agent accepted the undertaking; and (3) an understanding between the parties that the principal is to be in control of the understaking."[37] Because none of these elements exist and the TCPA does not provide for "on behalf of" liability, judgment should be granted in favor of CCL.

     5.   <u>Plaintiff Consented to be Transferred, and Initiated a Call to CCL</u>.

It was only after Plaintiff agreed to participate in the political survey and actually participated in the political survey that he consented to be transferred to a live representative from CCL.[38] As a result, not only did Plaintiff consent to be connected with CCL, but this election by Plaintiff, became a call that he initiated to CCL after concluding his participation in the political survey.[39]

     6.   <u>Plaintiff is Not Entitled to Injunctive Relief Because He Has Not Prevailed on the Merits of This Action.</u>

Plaintiff is not entitled to injunctive relief because he did not achieve the necessary success on the merits required for a permanent injunction to issue. While a statutory injunction analysis has a lower burden than a common law injunction analysis, Plaintiff must still show that

---

36   *See Thomas v. Taco Bell Corp.*, 879 F. Supp 2d 1079, 1084 (C.D. Cal. 2012) *aff'd*, 12-56458, 2014 WL 2959160 (9th Cir. July 2, 2014) (holding that absent a clear congressional intent that expresses otherwise, traditional vicarious liability standards apply under the TCPA); *See also Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 806 (M.D. La. 2004) (applying traditional vicarious liability standards when no different standard is explicitly provided in the statutory language).

37   *Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 280 (E.D.N.Y. 2013) (internal citation omitted).

38.   DE 38, Def's SOF ¶¶ 5-6, 8.

39.   *See Ashland Hosp. Corp. v. In'l Bhd. of Elec. Workers Local 575*, 807 F.Supp.2d 633 (E.D. Ky. 2011).

"there is a reasonable likelihood that the wrong will be repeated."[40] Additionally, it is necessary for Plaintiff to demonstrate "actual success on the merits" before a permanent injunction can issue.[41]

Here, Plaintiff has achieved no success on the merits and a permanent injunction is an improper remedy. While this Court adopted the Magistrate's Denial of Defendants Motion for Summary Judgment,[42] this was not a decision on the merits, as a court's role at summary judgment is not to try issues of fact but merely to determine whether sufficient issues of fact exist for litigation to proceed.[43] It is clear in this Circuit that "[i]n holding that a party is not entitled to summary judgment, the Court does not signal that the defending party has obtained any success on the merits."[44] When the Court denied CCL's Motion for Summary Judgment, no finding of fact was made relating to CCL's alleged TCPA violation -- meaning that the requirement of success on the merits has not been met.[45]

Furthermore, the parties' monetary settlement lacks any admission of wrongdoing by CCL and does not constitute the necessary success on the merits for permanent injunctive relief. Courts have consistently held that a voluntary settlement does not meet the burden and that there must be an "enforceable judgment against the defendant or comparable relief through consent

---

40. *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975).
41. *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).
42. DE 49.
43. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (The Court's duty at the summary judgment phase of litigation is confined to issue finding and does not extend to issue resolution).
44. *Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N. Y. Mellon Corp.*, 09 CIV. 6273 RMB AJP, 2013 WL 1189681 (S.D.N.Y. Mar. 21, 2013).
45. Indeed, as it relates to the supposed vicarious liability of CCL, the Court specifically found that those were factual matters to be proven by Plaintiff at the time of trial.

decree or settlement" that causes a "material alteration of the legal relationship of the parties."[46] Here, the settlement offer by CCL was voluntary and was neither a consent decree nor final judgment and did not cause any alteration in the legal status or relationship of the parties. Because Plaintiff has not achieved success on the merits of the TCPA claim and has put forth no evidence proving that CCL was in violation of the TCPA or that Plaintiff even received a telephone call from CCL, a permanent injunction may not issue.

### 7. Plaintiff is Not Entitled to Injunctive Relief Because He Has Not Shown the Likelihood of Future Violations of the TCPA

Pursuant to Judge Gleeson's order, Plaintiff must demonstrate a likelihood of future factually similar TCPA violations in order to be entitled to the extraordinary injunctive relief he seeks in this individual TCPA action.[47] In addition to proving actual success on the merits, a party seeking injunctive relief under the TCPA must demonstrate a likelihood of future violations.[48] The determination of likelihood of future violations is a fact specific test that must consider the totality of the circumstances concerning the alleged violation. Courts have the discretion to consider any relevant factors to determine if a plaintiff has met his burden of showing a likelihood of future violations including: (1) the gravity of any harm caused; (2) the extent of and motivation behind the violator's participation in the wrongful conduct; (3) the isolated or recurrent nature of the violation; and (4) whether the violator has recognized

---

46. *See Scarangella v. Grp. Health Inc.*, 877 F. Supp. 2d 78, 84 (S.D.N.Y. 2012), *vacated and remanded*, 731 F.3d 146 (2d Cir. 2013) (Monetary settlement of participant's claims was not success on the merits absent official judicial judgment or a change in the legal relationships of the parties).
47. DE 70.
48. *See S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (Permanent injunctions are granted not as punishment but to enjoin a party from future violations.).

culpability and/or sincerely promised that future violations will not occur.[49] Looking at these factors, it is clear that there is no threat of a likelihood of future violations for calls to Plaintiff asking political survey questions. Even if taken as true, the allegations do not demonstrate that any grave harm was caused by Plaintiff receiving one (1) telephone call that was offering a free cruise in exchange for Plaintiff's participation in a political survey.[50] The second factor does not demonstrate the likelihood of future violations either because CCL was not even the entity who initiated the purported telephone call; it was alleged to have been made by a third party.[51] Addressing the third factor, there was only one (1) telephone call alleged to have been made and courts usually will not grant injunctive relief when the action in question is isolated. Regarding the fourth factor, CCL has no problem promising and guaranteeing that it will not make any future unsolicited call to Plaintiff or any other telephone number associated with him, provided he informs Defendant of all such telephone numbers and agrees not to request to be called by CCL – which he has done in the past using aliases.

---

49. *Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280, 1285 (Nev. 2006) (Injunctive relief was denied where Plaintiff was only able to prove one or two violations because the extent of the harm was minimal).

50. *See State of Oklahoma ex rel. Edmondson v. Pope*, CV-06-487-C, 2007 WL 837248 (W.D. Okla. 2007) (Example of a court granting an injunction because the thousands of phone calls in violation gave rise to a presumption of a likelihood of future violations. One or two previous phone calls would not have been enough to give rise to such a presumption.); *see also Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) (The Court held that injunctive relief was proper because the Defendants admitted to over 1 million violations per month and the Defendants continued violations even after receiving a court order enjoining them).

51. *See Lucas v. Telemarketer Calling from (407) 476-5670*, 1:12-CV-630, 2013 WL 2456320 (S.D. Ohio June 6, 2013) *report and recommendation adopted sub nom. Lucas v. Telemarketer Calling From (407) 476-5680*, 1:12-CV-00630, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013) (In a case almost identical to the present litigation, the court denied an injunction because the entity who made the alleged telephone call was a third party and the TCPA does not encompass a clause for "aiding and abetting" in telemarketing.).

Perhaps most importantly, Defendant ceased providing its complimentary cruise to any entity conducting political survey telephone calls in or around July 2012, has not provided it to any other political survey company since and does not intend to at any point in the future. Simply put, Plaintiff is not entitled to injunctive relief because he has not demonstrated that there is a likelihood of future violations.

> 8. <u>Even if Plaintiff is Entitled to Injunctive Relief, the Scope of the Relief Requested is Improper and Unenforceable</u>

Even if this Court holds that injunctive relief is appropriate, the scope of injunctive relief Plaintiff is apparently seeking is overbroad and improper.[52] Although courts have "considerable discretion in fashioning the terms of an injunction," injunctions must be tailored to eliminate only the specific harm alleged.[53] Injunctions must be granted pursuant to Rule 65(d) of the Federal Rules of Civil Procedure which provides: "Every order granting an injunction … shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other documents, the act or acts sought to be restrained." The relief requested needs to be specific and must not be "so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt, (nor may it) enjoin 'all possible breaches of the law.'"[54] This is precisely what Plaintiff's proposed injunction is doing in that it is a broad and sweeping "obey the law" injunction which courts have generally refused to enforce.[55]

In determining the scope on an injunction, several factors courts consider include: (1) the nature and extent of the wrongful conduct; (2) any unreasonable delay by the plaintiffs in

---

52. The actual injunction Plaintiff seeks is unclear, but it appears to be one that enjoins CCL from "violating the law" and is not in any way limited to the Plaintiff and the telephone call he alleges he received.
53. *Quiksilver, Inc. v. Kymsta Corp.*, 360 F. App'x 886 (9th Cir. 2009).
54. *Sec. & Exch. Comm'n v. Savoy Indus., Inc.*, 665 F.2d 1310, 1317 (D.C. Cir. 1981).
55. *See N.L.R.B.*, 312 U.S. at 435–36 (There mere fact that a court has found a defendant to have violated a statute does not justify an injunction to broadly obey the statute).

bringing suit; and (3) the relative harm likely to result.[56] Here, the nature and extent of the alleged misconduct was minimal and there is little to no relative harm that can likely result. Even if Plaintiff is able to establish a TCPA violation (which thus far he has not), any injunctive relief needs to be tailored to the alleged prohibitive conduct and cannot broadly enjoin any and all violations of the TCPA. Plaintiff has never alleged that CCL personally made or initiated an alleged violative telemarketing call to his home and instead relies on statutes that provide relief against those who actually make and/or initiate certain types of telemarketing calls. The TCPA does not provide the same relief against entities alleged to be liable for "assisting and facilitating" illegal telemarketing activity.[57] Because Plaintiff is asking for an "obey the law" injunction, it is too broad and does not specifically put CCL on notice of what behavior is prohibited, making it improper due to vagueness.

There are many examples that are demonstrative regarding the limited scope of permanent injunctions in individual actions like the one at issue here. In *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.,* the court held that the lower court's injunction was too broad when it sought to enjoin the plaintiff from all violations of the Clean Water Act and remanded so the injunction could be properly tailored to "order compliance only with parameters that were being continuously or intermittently violated."[58] In *Mais v. Gulf Coast Collection Bureau, Inc.*, a TCPA case, the court enforced an appropriately narrow injunction that narrowly enjoined Gulf Coast specifically from placing any collections calls to the plaintiff's cellular

---

56. *Quiksilver*, 360 F. App'x at 889 (internal citation omitted).
57. *Lucas v. Telemarketer Calling from (407) 476-5670*, 1:12-CV-630, 2013 WL 2456320 (S.D. Ohio June 6, 2013) *report and recommendation adopted sub nom. Lucas v. Telemarketer Calling From (407) 476-5680*, 1:12-CV-00630, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013) (In a case almost identical to the present litigation, the court denied an injunction because the TCPA does not encompass a clause for "aiding and abetting" in telemarketing.).
58. *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 507 (3d Cir. 1993).

telephone number.[59] In *J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, another TCPA case, the court refused to grant an overbroad injunction that would prohibit behavior that was not even in violation of the TCPA[60] and, further, limited the injunction to the named plaintiff.

Finally, the present facts are almost identical to those in *Lucas*, where just like the present litigation, the plaintiff did not allege that the defendant had actually made any calls that violated the TCPA.[61] The court in *Lucas* held, and this Court should hold, that an injunction covering CCL would be too broad in that it would be an application of the TCPA in a third party vicarious liability context that is inappropriate.[62]

---

59. *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226 (S.D. Fla. 2013) (It is important to note that the Court refused to hold the hospitals and clinics, for whose behalf the debt collection calls were made, liable under the TCPA because to hold them liable would have been "inconsistent with the TCPA's statutory scheme.").

60. *J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, 75 Fed. R. Serv. 3d 267 (N.D. Cal. 2009) (the court held that the scope of the injunction was too broad because it did not have the proper exceptions for consumers with whom the Defendant had a prior business relationship and would enjoin Defendant from legal actions).

61. *Lucas v. Telemarketer Calling from (407) 476-5670*, 1:12-CV-630, 2013 WL 2456320 (S.D. Ohio June 6, 2013) *report and recommendation adopted sub nom. Lucas v. Telemarketer Calling From (407) 476-5680*, 1:12-CV-00630, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013).

62. Logically this Court cannot enjoin a third party that has not been identified and is not a party to this case. Similarly, an injunction cannot force CCL to police third parties that are not before this Court. The TCPA provides for injunctive relief limited to the specific violation alleged; that violation, if any occurred, would have been committed by the entity actually initiating the telephone call to Plaintiff, not CCL. As *Lucas* holds, the injunctive relief provided by the TCPA does not reach a third party like CCL.

Case No. 1:12-cv-00584-JG-VMS
*CCL's Renewed Statement of Claims and Defenses*

Dated: July 29, 2014

GREENSPOON MARDER, P.A.

*/s/Jeffrey A. Backman*
RICHARD W. EPSTEIN
(Fla. Bar No. 229091)
(Admitted Pro Hac Vice)
Richard.Epstein@gmlaw.com
JEFFREY A. BACKMAN
(Fla. Bar No. 0662501)
(Admitted Pro Hac Vice)
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A.
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile:  954.343.6958

-and-

MORGAN MELHUISH ABRUTYN
Richard T. Imossi, Esq.
rimossi@morganlawfirm.com
39 Broadway – Suite 1701
New York, New York 10006
Telephone: 212-809-1111

*Attorneys for Caribbean Cruise Line*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF service, providing copies to the following counsel of record registered to receive CM/ECF notification on this 29th day of July, 2014.

Todd C. Bank
Attorney at Law
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
TBLaw101@aol.com

*/s/Jeffrey A. Backman*
JEFFREY A. BACKMAN